JUDGE ENGELMAYER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOAN LITWIN, On Behalf of Herself and All Other Similarly Situated Shareholders,<br><br>Plaintiff,<br><br>v.<br><br>OCEANFREIGHT, INC., DRYSHIPS, INC., OCEAN RIG UDW, INC., PELICAN STOCKHOLDINGS, INC., JOHN LIVERIS, KONSTANDINOS KANDYLIDIS, ANTHONY KANDYLIDIS, PANAGIOTIS A. KORAKAS, and GEORGE BINIARIS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff alleges, based upon the investigation made by and through her attorneys, the following:

## NATURE OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff on behalf of herself and the other public shareholders of OceanFreight, Inc. ("OCNF" or the "Company") who have been damaged by the violations of federal law, and breaches of fiduciary duties owed to them by the members of the OCNF Board of Directors (the "Individual Defendants") identified *infra*, and by the aiding and abetting thereof by DryShips, Inc. ("DryShips" or the "Parent"), Ocean Rig UDW, Inc., a majority owned subsidiary of Parent ("Ocean Rig"), and Pelican Stockholdings Inc. ("Pelican" or "Merger Sub") with respect to the breach of fiduciary duty claims.  OCNF, Individual Defendants, Parent, Ocean Rig and Merger Sub are collectively referred to as the "Defendants."

2.      On July 26, 2011, the OCNF Board of Directors (the "Board") announced that it had entered into a definitive agreement (the "Merger Agreement") with Parent, a Republic of the Marshall Islands company, under which Pelican will merge with and into OCNF, with OCNF continuing its corporate existence as the surviving corporation in the merger and becoming a wholly-owned subsidiary of Parent (the "Merger").  At the effective time of the merger, each share of OCNF common stock outstanding (other than shares of OCNF common stock held by Parent or OCNF or any of their respective direct or indirect subsidiaries) will be converted into the right to receive: $11.25 in cash; and 0.52326 shares of Ocean Rig common stock (the "Merger Consideration" together with the Merger the "Proposed Transaction").

3.      Approximately 50.5% of the outstanding shares of OCNF common stock, which were held by certain entities controlled by OCNF's Chief Executive Officer, Antonis Kandylidis ("Kandylidis"), were purchased by Parent on August 24, 2011 for the Merger Consideration pursuant to a separate purchase agreement (the "Purchase Agreement") approved by the OCNF Special Committee (the "Special Committee") and the Board.  Parent has committed to vote those shares in favor of the approval of the Merger Agreement. Moreover, the closing of the Purchase Agreement caused shares of OCNF restricted stock (approximately 35,222 shares) held by OCNF's officers and directors and their affiliates to vest.

4.      As described below, the Proposed Transaction is fundamentally unfair to Plaintiff and other public shareholders of the Company.  The Individual Defendants' conduct constitutes a breach of their fiduciary duties owed to OCNF's shareholders and a violation of applicable legal standards governing their conduct.

5.    Plaintiff alleges that the Individual Defendants have breached their fiduciary duties to him and the other OCNF common shareholders by offering a price far below the intrinsic value of OCNF's shares, and seek to enjoin them from consummating the inadequate Proposed Transaction.

6.    The Company's improved prospects over the last year through significantly lowering its average fleet age, lowering its leverage profile and expanding its charter coverage demonstrates that OCNF common stock is currently undervalued.  Parent is trying to take advantage of the short-term dip in the price of Company stock by offering $16.44 per share, based on an exchange ratio of NOK5.41 / USD$1 as of July 25, 2011.  Parent's offer price is designed to take advantage of the temporary lull in the stock price due only to the downturn in the global economy and not because of any change in the Company's underlying strength.

7.    On May 27, 2011, OCNF announced that the Special Committee had been established to consider Parent's proposal.  The Special Committee is comprised of the Company's three purportedly "independent directors".  Since its formation, however, the Special Committee has not indicated whether it has investigated other possible deals that would offer a fair value to shareholders.  There is no evidence that an active market check or open auction for sale of the Company has been undertaken by the Special Committee, or that it has engaged in fair and open negotiations with all potential bidders.

8.    In connection with the Proposed Transaction, Ocean Rig filed a FORM 424B3 with the United States Securities & Exchange Commission (the "SEC") on October 13, 2011, containing the Company's materially false and misleading proxy statement (the "Proxy") that outlines the Proposed Transaction and its background.  As alleged herein, the Proxy fails to disclose to OCNF shareholders material information regarding the Proposed

Transaction, stripping such shareholders of their ability to render informed decisions as to whether to vote their shares in favor of the Proposed Transaction.

9.     Plaintiff seeks to enjoin Defendants from completing the Proposed Transaction or, in the event the Proposed Transaction is indeed consummated, to recover damages resulting from the Defendants' wrongful conduct.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(e) and Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9).  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where most of the actionable conduct took place.  OCNF's common stock trades on the NASDAQ Global Market, a securities exchange headquartered within this District.

## THE PARTIES

12.     Plaintiff Joan Litwin ("Plaintiff") is, and was at all times relevant hereto, a shareholder of OCNF.

13.     Defendant OCNF is a corporation organized and existing under the laws of the Republic of the Marshall Islands and headquartered in Athens, Greece.  OCNF is an owner of drybulk carriers and tankers that operate worldwide.  OCNF owns a fleet of 6 vessels, comprised of 6 drybulk vessels (4 Capesize and 2 Panamaxes) and has contracted to purchase 5 newbuilding Very Large Ore Carriers ("VLOC") with a combined deadweight tonnage of about 1.9 million tons.  The Company maintains its headquarters at 80 Kifissias Avenue,

Athens, Greece.  The Company's common stock trades under the ticker symbol "OCNF" on the NASDAQ Global Market.

14.     Defendant DryShips is a republic of the Marshall islands Company and owner of drybulk carriers and tankers that operate worldwide.  Through its majority owned subsidiary Ocean Rig, DryShips owns and operates 9 offshore ultra-deepwater drilling units, comprised of 2 ultra-deepwater semisubmersible drilling rigs and 7 ultra-deepwater drillships, 4 of which remain to be delivered to the Company in 2011 and 2013.  Additionally, DryShips owns a fleet of 36 drybulk carriers (including newbuildings), comprising 8 Capesize, 26 Panamax and 2 Supramax, with a combined deadweight tonnage of over 3.4 million tons, and 12 tankers (including newbuildings), comprising 6 Suezmax and 6 Aframax, with a combined deadweight tonnage of over 1.6 million tons.  DryShips maintains its headquarters at 80 Kifissias Avenue, gr 15125 Amaroussion, Greece.  The Company's common stock trades under the ticker symbol "DRYS" on the NASDAQ Global Market.

15.     Defendant Ocean Rig is an international offshore drilling contractor providing oilfield services for offshore oil and gas exploration, development and production drilling and specializing in the ultra-deepwater and harsh-environment segment of the offshore drilling industry.  Ocean Rig owns and operates 9 offshore ultra-deepwater drilling units, comprised of 2 ultra-deepwater semisubmersible drilling rigs and 7 ultra-deepwater drillships, 4 of which remain to be delivered to the Company in 2011 and 2013.  Ocean Rig's common shares commenced "regular way" trading on the NASDAQ Global Select Market under the symbol "ORIG" on October 6, 2011.

16.     Defendant Merger Sub is a wholly-owned subsidiary of Parent, formed solely for purposes of effectuating the Proposed Transaction.  Under the terms of the Merger Agreement,

Merger Sub will be merged with and into the Company, with the Company surviving the Merger as a wholly owned subsidiary of Parent.

17.     Defendant John Liveris ("Liveris") is OCNF's Chairman of the Board and has served on OCNF's Board since April 2007.  Defendant Liveris is Chairman of OCNF's Special Committee.  Defendant Liveris owns 778 shares of OCNF's restricted stock that vested in connection with the closing of the Purchase Agreement.

18.     Defendant Konstandinos Kandylidis ("K. Kandylidis") has served on OCNF's Board of Directors since April 2007.  Defendant K. Kandylidis held 111 shares of OCNF's restricted stock that vested in connection with the closing of the Purchase Agreement.

19.     Defendant Anthony Kandylidis ("Kandylidis") founded OCNF in September 2006 and took the Company public in April 2007.  Kandylidis serves as the Company's Chief Executive Officer.   Additionally, simultaneously with the execution of the Merger Agreement, Defendant Kandylidis entered into a Purchase and Sale Agreement on July 26, 2011, whereby Parent acquired from Basset Holdings Inc., Steel Wheel Investments Limited ("Steel Wheel"), and Haywood Finance Limited (collectively, the "Sellers", each of which is controlled by Defendant Kandylidis), all their OCNF shares amounting to 866,666, 351,333 and 1,782,857 shares, respectively.  Defendant Kandylidis held 33,333 OCNF's restricted stock that vested in connection with the closing of the Purchase Agreement through his control of Steel Wheel.

20.     Defendant Panagiotis A. Korakas ("Korakas") serves as a director of OCNF and is a member of OCNF's Special Committee.  Defendant Korakas held 111 shares of OCNF's restricted stock that vested in connection with the closing of the Purchase Agreement.

6

21. Defendant George Biniaris ("Biniaris") serves as a director of OCNF and is a member of OCNF's Special Committee.

22. As a "Public Company" within the meaning of the federal securities laws, OCNF is bound by the Security Exchange Act of 1934 (the "Exchange Act") and its reporting requirements.

23. As directors and officers of OCNF, the Individual Defendants identified in paragraphs 17 through 21 owe fiduciary duties to OCNF and its shareholders and were and are required to act in furtherance of the best interests of OCNF shareholders, to maximize shareholder value in any sale of the Company, to refrain from benefiting from information to which they are privy only by virtue of their positions, and to refrain from exerting undue influence over decisions of the Board or otherwise taking advantage of their positions of power and control within the Company. Moreover, the Individual Defendants, because of their positions of control and authority as participants, officers and/or directors of the Company, were able to and did, directly or indirectly, control the actions of the Company in connection with the disclosure violations set forth herein, or participated in the preparation, approval and filing of OCNF's materially misleading Proxy and its dissemination.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all other shareholders of OCNF who are, or will be, threatened with injury arising from Defendants' actions (the "Class"). The Class excludes Defendants, and any person, firm, trust, corporation or other entity related to, affiliated with, or controlled by any of the Defendants, as well as the immediate families of the Defendants.

25. This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of October 7, 2011, the total number of issued and outstanding OCNF shares was 5,946,180.  Members of the Class are geographically dispersed throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

(b)     Plaintiff is committed to prosecuting this action and has retained competent counsel, experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(c)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impede their ability to protect their interests.

(d)     To the extent Defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable to the Class.

26.     Questions of law and fact exist that are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether Defendants participated in and/or pursued the course of conduct complained of herein by filing and publishing documents with the SEC containing

statements that, at the time and under the circumstances which they were made, omitted to state material facts necessary in order to make the statements therein not false or misleading;

(b)      Whether the Defendants acted knowingly or recklessly in disseminating documents which omitted to disclose material facts concerning the Proposed Transaction;

(c)      Whether the Individual Defendants have breached their fiduciary duties owed to Plaintiff and the Class, including but not limited to, the duties of undivided loyalty, independence, due care, honesty and good faith;

(d)      Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the Class;

(e)      Whether Plaintiff and the other members of the Class will be irreparably damaged if Defendants are not enjoined from continuing the conduct described herein, or alternatively, if the Proposed Transaction is consummated, whether they have suffered compensable damages;

(f)      Whether the consideration payable to Plaintiff and the Class for their OCNF shares pursuant to the Proposed Transaction is unfair and inadequate;

(g)      Whether the Individual Defendants are engaged in self-dealing or unjustly enriching themselves at the expense of Plaintiff and other Class members in connection with the Proposed Transaction; and

(h)      Whether Parent, Ocean Rig and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties of candor, due care, good faith,

and loyalty with respect to Plaintiff and the Class as a result of the conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

### Company Background

27.     OCNF is currently incorporated in the Republic of the Marshall Islands and headquartered in Athens, Greece. OCNF primarily operates and generates revenue through its ownership and operation of drybulk vessels that operate worldwide.

### Proposed Transaction Background

28.     On August 24, 2011, OCNF issued a press release announcing that DryShips acquired 3,000,856 shares of OCNF, acquired from the Sellers, under the Purchase Agreement. These shares represent a majority of the outstanding shares of OCNF. The consideration paid by DryShips for each OCNF share consisted of (x) $11.25 in cash and (y) 0.52326 shares of common stock of Ocean Rig par value of $0.01 per share, with cash paid in lieu of fractional shares. The total consideration paid for those shares was $33,759,671.08 in cash and 1,570,226 shares of Ocean Rig common stock. The Ocean Rig shares so transferred were outstanding shares held by DryShips. DryShips has agreed to vote the OCNF shares that it acquired in favor of the merger of OCNF with a subsidiary of DryShips, as contemplated by the Merger Agreement. DryShips holds sufficient OCNF shares to approve the Merger. In the Merger, DryShips will acquire the remaining outstanding shares of OCNF for per share consideration consisting of $11.25 in cash and 0.52326 shares of Ocean Rig, with cash paid in lieu of fractional shares. The Merger is expected to close in the fourth quarter of 2011.

29.     On July 26, 2011, OCNF and DryShips issued a joint press release announcing

that:

> the companies have entered into a definitive agreement for DryShips to acquire the outstanding shares of OceanFreight for consideration per share of $19.85, consisting of $11.25 in cash and 0.52326 of a share of common stock of Ocean Rig UDW Inc., a global provider of offshore ultra deepwater drilling services that is 78% owned by DryShips. The Ocean Rig shares that will be received by the OceanFreight shareholders will be from currently outstanding shares held by DryShips. Under the terms of the transaction, the Ocean Rig shares will be listed on the Nasdaq Global Select Market upon the closing of the merger. Based on the July 25, 2011 closing price of 89.00 NOK ($16.44) for the shares of Ocean Rig on the Norwegian OTC, the transaction consideration reflects a total equity value for OceanFreight of approximately $118 million and a total enterprise value of approximately $239 million, including the assumption of debt. The transaction has been approved by the Boards of Directors of DryShips and OceanFreight, by the Audit Committee of the Board of Directors of DryShips, which negotiated the proposed transaction on behalf of DryShips, and by a Special Committee of independent directors of OceanFreight established to negotiate the proposed transaction on behalf of OceanFreight.

***Background of Sham Auction Process Leading to the Offer and the Merger***

30.     On or about October 13, 2011, Ocean Rig filed a FORM 424B3 containing the

Company's Proxy statement reporting that the Individual Defendants' determined that the

Proposed Transaction was in the best interests of the Company and its shareholders and

recommending that its shareholders vote for the proposal to adopt the Merger Agreement.

Included in the Proxy was a section detailing the background of the merger which stated, among

other things, that on May 23, 2011, Pankaj Khanna ("Khanna"), the Chief Operating Officer of

Parent, informed Kandylidis, that Parent was interested in investigating possible strategic

transactions between Parent and OCNF.

31.     Later that week, on May 27, 2011, OCNF held a board meeting during which

Kandylidis informed the Board that he received an expression of interest from Parent and the

Board constituted the Special Committee comprised of Liveris, Biniaris and Korakas to evaluate,

discuss and negotiate any proposal by Parent for a strategic transaction and to make a recommendation to the Board at the appropriate time.

32.     On June 8, 2011, Khanna sent a letter to the Special Committee outlining a proposed transaction, whereby, Parent would acquire a majority interest in OCNF held directly or indirectly by Kandylidis.

33.     On June 15, 2011, the Special Committee responded to Khanna's letter acknowledging the benefits of a potential transaction with Parent but stating its strong preference that all shareholders of OCNF participate in the transaction and receive the same consideration. The Special Committee requested that Parent consider acquiring all the shares of OCNF thereby potentially gaining full ownership of OCNF.

34.     On June 17, 2011, Khanna sent a response to the Special Committee reiterating the rationale and benefits of the proposed transaction and, in addition, offering for Parent to acquire, at a mutually acceptable price, OCNF's newbuild contracts for its five VLOCs, of which two are unfinanced.

35.     On June 21, 2011, the Special Committee responded to Khanna reiterating its preference for a transaction on equal terms for all OCNF shareholders either in the form of an offer being made for all shares on equal terms or in the form of an undertaking by Kandylidis whereby he would commit to extend Parent's offer for the shares held directly or indirectly by Kandylidis on a pro-rata basis to the remaining shareholders. The Special Committee informed Khanna that it may consider other alternatives to realize the value of OCNF's stock for all shareholders. The Special Committee, however, indicated its willingness to sign a non-disclosure agreement and exchange due diligence material with Parent.

36.     On June 28, 2011, Khanna informed the Special Committee that Parent was willing to proceed with a transaction which would involve an acquisition of all of the outstanding shares of OCNF common stock in which all shareholders would receive the same consideration per share, and that Parent was willing to acquire all of the outstanding common stock of OCNF for $0.60 per share (or $12 per share on a 1-for-20 reverse stock split adjustment) in an all cash transaction, subject to satisfactory due diligence. A non-disclosure agreement was executed on the same day and on June 29, 2011, a full due diligence request list was provided to the Special Committee by Parent.

37.     On July 1, 2011, the Special Committee held a meeting by telephone, attended by its financial advisor Fearnley Fonds ASA ("Fearnley"), and its legal advisor, Seward & Kissel LLP ("Seward"), to discuss various matters, including (i) informal discussions between Liveris and Khanna concerning the terms of the indicative expression of interest contained in Parent' June 28, 2011 letter to the Special Committee, and (ii) the general process, securities law and other considerations to be taken into account in connection with the proposed transaction, including Fearnley's views on possible alternatives to the proposed transaction.

38.     On July 11, 2011, Khanna informed the Special Committee that Parent had reviewed the diligence materials that had been made available to it and had revised its proposal to acquire all of the outstanding shares of OCNF. Khanna noted that Parent proposed to acquire (i) the approximately 50.5% ownership interest in OCNF held directly or indirectly by Kandylidis for $14 per share in cash and (ii) the remaining OCNF shares for shares of Ocean Rig presently owned by Parent with an implied value of $16 per OCNF share.

39.     On July 12, 2011, Special Committee informed Parent that it could not recommend Parent's offer and that, in light of the underlying values of OCNF, the Special

Committee deemed the offer price as insufficient. The Special Committee indicated that it believed an offer of at least $22.50 per share was warranted.

40.     On July 14, 2011, Khanna informed the Special Committee that Parent had further revised its proposal and was willing to proceed with a transaction in which Parent would acquire the shares held directly or indirectly by Kandylidis for $16 per share in cash and all other OCNF shares for shares of Ocean Rig in an offer which Parent believed reflected an implied value of $18 per OCNF share.

41.     On July 14, 2011, the Special Committee reiterated the position set out in its July 12th correspondence that the proposed offer did not reflect the underlying value of OCNF and that the offer did not address the Special Committee's desire for equal treatment of all of OCNF's shareholders. The Special Committee proposed that 50% of the consideration to all shareholders be paid in cash and the remaining 50% in the form of Ocean Rig shares valued at $17.50 per Ocean Rig share (the then trading level). The Special Committee communicated its view that an offer on this basis should be priced at $26 per OCNF share and all shareholders should be paid at the same time.

42.     On July 15, 2011, Khanna informed the Special Committee that Parent was willing to modify the proposed terms of the acquisition so that all shareholders of OCNF would receive the same cash and stock consideration.

43.     On July 15, 2011, the Special Committee agreed, in light of the revised proposal from Parent, to meet in person with Parent and its advisors in Athens the following week to further discuss the transaction.

44.     On July 19, 2011, the Audit Committee chairman of Parent, Harry Kerames, along with Khanna and the Parent's advisors, met with members of the Special Committee and

its advisors to discuss the potential transaction. At the conclusion of the negotiations, the parties agreed in principle, subject to negotiation of definitive agreements reflecting other terms of the proposed transaction, Parent's completion of its due diligence review and board approval, on a transaction that would occur in two stages: (i) no less than four weeks after signing, Parent would acquire the approximately 50.5% equity interest in OCNF held directly or indirectly by Kandylidis at a price per OCNF share equal to $11.25 in cash and 0.52326 shares of Ocean Rig and (ii) Parent would acquire all other shares of OCNF for the same consideration by means of a one-step merger of a newly-formed subsidiary of Parent with OCNF.

45.    On July 25, 2011, the Special Committee met to approve the transaction. Fearnley, which acted as the financial advisor to the Special Committee, delivered its oral fairness opinion at the meeting by presenting its conclusion that the merger consideration to be received by the holders of OCNF common stock was fair from a financial point of view to such holders. Fearnley also delivered its written fairness opinion to the Special Committee on the same date. Subsequently, Seward presented the structure of the transaction and discussed the duties and obligations applicable to the Special Committee. After the presentations, the Special Committee, among other things, unanimously approved and recommended the transaction to the Board and unanimously approved and recommended that the Merger Agreement be submitted to the OCNF shareholders for their approval. After reviewing the Special Committee's recommendations, the Board, among other things, unanimously approved the transaction, unanimously directed that the Merger Agreement be submitted to the OCNF shareholders for their approval.

46.    On July 26, 2011, the parties signed the Merger Agreement and the Purchase Agreement and announced the transaction.

47.    On August 24, 2011, pursuant to the terms of the purchase agreement, Parent acquired the OCNF shares held by the Sellers for the Merger Consideration.

## Misleading Nature of the Proxy Statement

48.    On June 21, 2011 the Special Committee informed Khanna that it may consider other alternatives to realize the value of OCNF's stock for all shareholders.  Shortly thereafter, on July 1, 2011 the Special Committee met with its financial advisor Fearnley and its legal advisor, Seward, to discuss various matters, including: (i) Fearnley's views on possible alternatives to the proposed transaction.  The Proxy fails to disclose what these other alternatives for realizing value for OCNF shareholders were or if they were actually considered. Instead, the Proxy makes it virtually clear that Parent's acquisition of the Company was to proceed without consideration by the Special Committee of alternatives to the Proposed Transaction.

49.    The Proxy further fails to disclose the analysis performed by the Special Committee in determining on July 12, 2011 that an offer of at least $22.50 per OCNF share was warranted and its view on July 14, 2011 that an offer, on the basis of 50% of the consideration to all shareholders be paid in cash and 50% in the form of Ocean Rig shares, be valued at $26 per OCNF share.  OCNF shareholders are entitled to this critical information in making an informed vote on the Proposed Transaction in light of the fact that the Board, through the recommendation of the Special Committee, ultimately approved the Proposed Transaction for consideration valued at $16.44 well below the consideration values set forth above.

50.    On July 25, 2011, Fearnley delivered its opinion to the Special Committee as to the fairness, from a financial point of view, of the merger consideration to the holders of OCNF's common stock, based upon and subject to the factors and assumptions, limitations,

qualifications and other matters set forth in the written opinion attached as Annex C to the Proxy statement (the "Fairness Opinion").

51.     The Fairness Opinion states, among other things, that in arriving at its opinion Fearnley: (i) reviewed certain information furnished to us by the management of the Company, including financial forecasts and analyses, relating to the business, operations and prospects of the Company; (ii) reviewed the share trading price history and valuation multiples for the Company's common stock and Ocean Rig's stock and compared them with those of certain publicly traded companies that it deemed relevant; and (iii) compared the proposed financial terms of the Merger with the financial terms of certain other transactions that it deemed relevant.

52.     As to the dissenters' rights of appraisal the Proxy states:

Under the MIBCA, a shareholder of a corporation has the right to vote against any plan of merger to which the corporation is a party. If such shareholders vote against the plan of merger, they may have the right to seek payment from their corporation of the appraised fair value of their shares (instead of the contractual merger consideration). However, the right of a dissenting shareholder under the MIBCA to receive payment of the appraised fair value of his shares is not available "for the shares of any class or series of stock, which shares or depository receipts in respect thereof, at the record date fixed to determine the shareholders entitled to receive notice of and to vote at the meeting of the shareholders to act upon the agreement of merger or consolidation, were either (i) listed on a securities exchange or admitted for trading on an interdealer quotation system or (ii) held of record by more than 2,000 holders." It is the view of OceanFreight that since shares of OceanFreight common stock are listed on the NASDAQ Global Market, a dissenting holder of shares of OceanFreight common stock has no right under the MIBCA to receive payment for the appraised fair value of the shares.

53.     The Proxy filed by the Company with the SEC, in violation of the federal securities laws, is materially misleading due to numerous omissions of information necessary for Plaintiff and the Class to make informed decisions as to whether to vote their shares in favor of the Proposed Transaction. These omissions include:

(a)    Information as to whether the Special Committee considered alternatives to the Proposed Transaction and details, if any, as to leveraging tactics used by the Special Committee in its negotiations with Parent; and

(b)    Details regarding OCNF's assumptions in its various financial forecasts and analyses, relating to the business, operations and prospects of OCNF, provided to Fearnley for its Fairness Opinion and critical to OCNF's shareholders in making an informed decision on whether to vote for approval of the Proposed Transaction.

(c)    Details regarding the share trading price history and valuation multiples for OCNF common stock and Ocean Rig common stock and the comparison of these with those of certain publicly traded companies Fearnley relied upon in providing its Fairness Opinion.

(d)    Details of the proposed financial terms of the Merger with the financial terms of certain other transactions Fearnley relied upon in providing its Fairness Opinion.

(e)    It is unclear and the Proxy fails to disclose the relevant provision or provisions of the Business Corporations Act of the Marshall Islands that contains the prohibition on dissenters' rights of appraisal in situations where, "shares of any class or series of stock, which shares or depository receipts in respect thereof, at the record date fixed to determine the shareholders entitled to receive notice of and to vote at the meeting of the shareholders to act upon the agreement of merger or consolidation, were either (i) listed on a securities exchange or admitted for trading on an interdealer quotation system or (ii) held of record by more than 2,000 holders."

### Unfair Nature of the Transaction

54.     The independence of Individual Defendant Kandylidis is in serious doubt since OCNF's consultancy agreement with Steel Wheel, a company wholly-owned by Kandylidis, as modified by an addendum dated July 25, 2011, entitles Steel Wheel to a change of control payment of €2.7 million upon closing of the Merger and, pursuant to the addendum noted above, entitles Steel Wheel to the continued payment of its monthly consultancy fee of €75,000 until the later of December 31, 2011 or the closing of the Merger.

55.     Further, Parent has agreed to use reasonable efforts to enter into employment agreements with OCNF's President and Chief Operating Officer, Demetrius Nenes and OCNF's Chief Financial Officer, Solon Dracoulis.

56.     Moreover, the merger agreement provides for: 1) director and officer indemnification arrangements for each of OCNF's directors and officers and provides existing directors' and officers' liability insurance to the OCNF directors and officers that will continue for six years following the completion of the merger; and 2) all legal and advisory fees up to $1,500,000 incurred by entities controlled by Kandylidis in connection with the sale of their shares of OCNF common stock to Parent will be paid for by OCNF.

57.     Unless the Proposed Transaction is preliminarily enjoined until such time as the Individual Defendants act in accordance with their fiduciary duties to maximize shareholder value, Plaintiff and the other members of the class will be harmed and will lose the opportunity to receive full value for their shares.

58.     The Proposed Transaction is wrongful, unfair, and harmful to Plaintiff and OCNF's public stockholders who are members of the Class, and represents an attempt by

the Individual Defendants' to aggrandize their personal and financial positions and interests at the expense of, and to the detriment of, Class members.

59.     Moreover, the inherent unfairness of the Proposed Transaction is highlighted by the seeming lack of concerted efforts on the part of the Special Committee to induce a higher offer from Parent or to meaningfully solicit other potential offers, not to mention the Special Committee's ignoring the possibility of maintaining the Company as a stand-alone entity.

60.     Plaintiff and the Class will be deprived of their right to be remunerated equitably and proportionally for their investments in OCNF's valuable and growing business if the Proposed Transaction is not enjoined.

### Coercive Nature of the Proposed Transaction

61.     Lastly, together with all of the coercive and deal protection devices enumerated above, the Merger Agreement contains a "No-Solicitation" provision that prohibits the Company from soliciting other offers.

62.     Additionally, approval of the Proposed Transaction is a certainty, given that Parent has agreed to vote the 50.5% of OCNF shares, which were held by entities controlled by Defendant Kandylidis, in favor of the approval of the Proposed Transaction.

63.     Moreover, The Merger Agreement also imposes a $4.5 million "Termination Fee" on OCNF shareholders. This amount further makes any competing transaction that much more expensive to any potential acquirer. Additionally, even if the Company terminates the Merger Agreement in favor of a "Superior Proposal", it would still be obligated to pay a $4.5 million termination fee to Parent

64.     Lastly, OCNF shareholders are further harmed in that they have no recourse to seek appraisal rights for the fair value of their OCNF shares, even though they are effectively

being foreclosed from exercising a meaningful vote on the Proposed Transaction containing inadequate merger consideration.

## COUNT I

### Violation of Exchange Act § 14(a) and
### Rule 14a-9 Promulgated Thereunder
### Against the Individual Defendants and OCNF

65.     Plaintiff incorporates by reference the prior allegations set forth above as if fully set forth herein.

66.     Individually and in concert, the Individual Defendants have engaged in a course of conduct pursuant to which representations they made by means of the Proxy containing statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, at the time and in the circumstances under which they were made, omitted to state material facts necessary in order to make the statements therein not false or misleading.

67.     By reason of the foregoing, the Individual Defendants and OCNF have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

68.     The Individual Defendants' and OCNF's conduct has injured and will injure Plaintiff and the other shareholders of OCNF, for which they have no adequate remedy at law.

## COUNT II

### Violations of § 20(a) of the Exchange Act
### Against the Individual Defendants

69.     Plaintiff incorporates by reference the prior allegations set forth above as if fully set forth herein.

70.     The Individual Defendants were each controlling persons of the Company within the meaning of § 20(a) of the Exchange Act.  Specifically, each of the Individual Defendants had the power and authority to cause the Company to engage in the wrongful conduct complained of

herein by reason of the fact that, as directors and/or officers of the Company, each participated in the day-to-day affairs of the Company in connection with the events leading to the Proposed Transaction and the subsequent filing of the Proxy, in violation of Section 14(a) of the Exchange Act.

71.     As controlling persons of OCNF, the Individual Defendants are jointly and severally liable to Plaintiff and the Class for the violations complained of herein.

### COUNT III

**Breach of Fiduciary Duties**
**Against the Individual Defendants**

72.     Plaintiff incorporates by reference the prior allegations set forth above as if fully set forth herein.

73.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in OCNF.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of these Defendants are enjoined and a fair process is substituted.

74.     The Individual Defendants, acting in concert, have and continue to violate their fiduciary duties owed to the public shareholders of OCNF, have put their own personal interests ahead of the interests of the OCNF public shareholders, and have used their control positions as officers and directors of OCNF for the purpose of reaping personal gain for Board members at the expense of OCNF's public shareholders.

75.     The Individual Defendants failed to: (1) undertake an adequate evaluation of OCNF's worth as a potential merger/acquisition candidate; (2) take adequate steps to enhance OCNF's value and/or attractiveness as a merger/acquisition candidate; (3) effectively expose

22

OCNF to the marketplace in an effort to create an active and open auction for OCNF; and (4) act independently so that the interests of public shareholders would be protected. Instead, the Individual Defendants have agreed to inadequate Merger Consideration for the shares of OCNF stock that does not reflect the true value of OCNF.

76. As a result of the actions of the Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair compensation for OCNF's stock and business, and will be prevented from obtaining a fair price for their shares.

77. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders of OCNF, without providing sufficient information to enable OCNF's public shareholders to decide whether to vote for approval of the Proposed Transaction.

78. As demonstrated by the allegations above, the Individual Defendants have breached their duties of care, loyalty, candor, good faith, and independence owed to Plaintiff and the public shareholders of OCNF because, among other reasons, they have failed to take steps to maximize the value of OCNF to its public shareholders and/or are attempting to improperly put their personal interests ahead of the interests of OCNF shareholders.

79. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, all to the irreparable harm of Plaintiff and the Class, for which Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT IV

### Claims against OCNF, Parent, Ocean Rig, and Merger Sub,
### For Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties

80.     Plaintiff incorporates by reference the prior allegations set forth above as if fully set forth herein.

81.     The Individual Defendants breached their fiduciary Duties owed to OCNF shareholders by their actions alleged above.

82.     Defendants OCNF, Parent, Ocean Rig, and Merger Sub knowingly aided and abetted the breaches of fiduciary duties committed by the Individual Defendants to the detriment of Plaintiff and OCNF public shareholders.  The above-mentioned Defendants have acted and continue to act with knowledge or with reckless disregard to the fact that the Individual Defendants are in breach of their fiduciary duties.  The Proposed Transaction could not and would not take place without the active aiding and abetting of the above-mentioned Defendants.

83.     Unless enjoined by this Court, said Defendants will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the Class and their irreparable harm, for which Plaintiff and the Class have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor and in the favor of the Class, and against the Defendants as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

B.      Declaring that the Individual Defendants have violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and have breached their fiduciary duties to Plaintiff and the Class;

C.      Declaring that the conduct of the Individual Defendants in approving the Proposed Transaction are breaches of the Individual Defendants' fiduciary duties;

D.      Declaring that Defendants OCNF, Parent, Ocean Rig, Merger Sub and have aided and abetted in the breach of fiduciary duties committed by the Individual Defendants;

E.      Declaring that the Proposed Transaction is unfair, unjust and inequitable to Plaintiff and the other members of the Class;

F.      Preliminarily and permanently enjoining all named Defendants and all those acting in concert with them from consummating the Proposed Transaction at a price that is not fair and equitable, until such time that the Individual Defendants have adequately undertaken all appropriate and available methods to maximize shareholder value;

G.      In the event the Proposed Transaction is consummated, rescinding it or awarding actual and punitive damages to Plaintiff and the Class, together with prejudgment and post judgment interest;

H.      Awarding fees, costs and expenses to Plaintiff incurred in connection with this litigation, including reasonable attorneys' and experts' fees; and

I.      Granting such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: October 13, 2011

**WEISS & LURIE**

By: _____

Joseph H. Weiss
Mark D. Smilow
Michael A. Rogovin
1500 Broadway, 16th Floor
New York, NY 10036
(212) 682-3025

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Joan Litwin, duly certify and state:

1.   I make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934 (the "Act").

2.   I have reviewed the complaint, adopt its allegations and authorize the filing of it or a similar complaint, if required.

3.   I did not engage in transaction in the security or securities that are the subject of this action at the direction of counsel or in order to participate in any private action arising under Title I of the Act.

4.   I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.   To the best of my current knowledge, the following are all of my transactions in OceanFreight, Inc. securities specified in the Complaint:

| Date , Ticker | Type of Security | Number of Shares | Purchase or Sale | Share Price |
|---|---|---|---|---|
| 10/6/11 - OCNF | (stock/bond) | 500 | 5/12/08 | 1.47 |
| 10/6/11 - OCNF | STOCK | 8 | AFTER REVERSE SPLITS | |

6.   During the three year period preceding the date on which this certification is signed, I have not served or sought to serve as a class representative in any case brought under the Federal Securities Laws.

7.   I will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's *pro rata* share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.



## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

8.     The matters stated in this declaration are true to the best of my current knowledge, information and belief.

9.     I hereby certify, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct.

Dated:   _OCT, 5, 2011_

_____
(signature)