**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| JOAN LITWIN, On Behalf of Herself and All Other Similarly Situated Shareholders, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| OCEANFREIGHT, INC., DRYSHIPS, INC., OCEAN RIG UDW, INC., PELICAN STOCKHOLDINGS, INC., JOHN LIVERIS, KONSTANDINOS KANDYLIDIS, ANTHONY KANDYLIDIS, PANAGIOTIS A. KORAKAS, and GEORGE BINIARIS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**CASE NO.  11-cv-7218 (PAE)**

_____


**MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TO SHOW CAUSE WHY A TEMPORARY RESTRAINING ORDER SHOULD NOT BE ENTERED ENJOINING THE SPECIAL SHAREHOLDER MEETING CURRENTLY SCHEDULED FOR NOVEMBER 3, 2011, GRANTING EXPEDITED DISCOVERY AND SETTING A HEARING ON PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**


WEISS & LURIE
Joseph H. Weiss
David C. Katz
Mark D. Smilow
Michael A. Rogovin
1500 Broadway, 16th Floor
New York, New York  10036
(212) 682-3025
(212) 682-3010 Fax

*Attorneys for Plaintiff Joan Litwin*

## <u>TABLE OF CONTENTS</u>

Page No.

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      SUMMARY OF THE ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Defendants Failed to Comply With the SEC's Rules Concerning
              the Minimum Time Period Required to Send the Proxy to Shareholders
              Prior to the Shareholder Meeting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    The Proposed Merger Substantially Undervalues OCNF Through an
              Unfair and Inadequate Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.    Defendants Filed a Materially Misleading Proxy That Omits Information
              Necessary to Enable Shareholders to Cast Informed and Intelligent Votes on
              Whether to Approve or Reject the Proposed Merger. . . . . . . . . . . . . . . . . . . . . . 10

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    The Standard for a Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    Shareholders Will Suffer Significant Irreparable Injury
              and Imminent Harm Absent the Court's Intervention. . . . . . . . . . . . . . . . . . . . . 11

        C.    The Harm to Plaintiff and Other OCNF Shareholders
              Outweighs Any Hypothetical Harm to Defendants. . . . . . . . . . . . . . . . . . . . . . . 13

        D.    Plaintiff Has Demonstrated More Than a Strong
              Probability of Success on the Merits of its Claims. . . . . . . . . . . . . . . . . . . . . . . 15

              1.    Delaware Common Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

              2.    Federal Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              3.    The Material Omissions Justifying a Preliminary Injunction. . . . . . . . . 18

                    a.    The Proxy Fails to Disclose Material Financial Information
                          Financial Projections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

b.      The Proxy Fails to Disclose Key
Inputs for Fearnley Financial Analysis. . . . . . . . . . . . . . . . . . . . . 19

E.     Shareholders Will Suffer Irreparable Harm
Without An Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F.     The Balance Of The Equities Strongly
Favors Issuing An Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.     The Injunction Will Serve the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*,
    830 F. Supp. 361 (S.D. Tex. 1993), *aff'd*, 20 F.3d 465 (5th Cir. 1994). .................. 17

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
    598 F.3d 30 (2d Cir. 2010)........................................................................ 11

*ICN Pharms., Inc. v. Khan*,
    2 F.3d 484 (2d Cir. 1993)........................................................................ 12

*Krull v. SEC*,
    248 F.3d 907 (9th Cir. 2001). ................................................................... 22

*Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*,
    636 F. Supp. 1513 (S.D. Ind. 1986). ......................................................... 12

*MONY Group, Inc. v. Highfields Cap. Mgmt., L.P.*,
    368 F.3d 138 (2d Cir. 2004)..................................................................... 12

*Mai Basic Four, Inc. v. Prime Computer, Inc.*,
    871 F.2d 212 (1st Cir. 1989). ................................................................... 12

*Marshall Field & Co. v. Icahn*,
    537 F. Supp. 413 (S.D.N.Y. 1982)..................................................... 12, 13

*Mills v. Electric Automobile-Lite Co.*,
    396 U.S. 375 (1970)............................................................................... 12

*Polaroid Corp. v. Disney*,
    862 F.2d 987 (3d Cir. 1988)........................................................... 12, 13

*Stahl v. Gibraltar Fin. Corp.*,
    967 F.2d 335 (9th Cir. 1992). ................................................................... 17

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976)....................................................................... 17, 18

## STATE CASES

*In re Anderson, Clayton S'holders' Litigation,*
    519 A.2d 669 (Del. Ch. 1986).................................................................... 21

*Arnold v. Society for Sav. Bancorp, Inc.,*
    650 A.2d 1270 (Del. 1994). ................................................................... 16

*Barkan v. Amsted Indus.,*
    567 A.2d 1279 (Del. 1989). ................................................................... 15

*Cantor Fitzgerald, L.P. v. Cantor,*
    724 A.2d 571 (Del. Ch. 1998).................................................................. 15

*Clements v. Rogers,*
    790 A.2d 1222 (Del. Ch. 2001).................................................................. 16

*Eisenberg v. Chicago Milwaukee Corp.,*
    537 A.2d 1051 (Del. Ch. 1987)................................................................. 13

*IT Corp. v. County of Imperial,*
    35 Cal. 3d 63 (1983). ......................................................................... 21

*Joseph v. Shell Oil Co.,*
    482 A.2d 335 (Del. Ch. 1984)................................................................. 13

*In re MONY Group, Inc. S'holder Litig.,*
    852 A.2d 9 (Del. Ch. 2004)................................................................... 17

*McMullin v. Beran,*
    765 A.2d 910 (Del. 2000). ................................................................... 15

*In re Netsmart Techs., Inc. S'holders Litig.,*
    924 A.2d 171 (Del. Ch. 2007)................................................... 14, 16, 18

*ODS Techs., L.P. v. Marshall,*
    832 A.2d 1254 (Del. Ch. 2003)............................................................ 12, 20

*In re PNB Holding Co. S'holders Litig.,*
    Consol. C.A. No. 28-N, 2006 Del. Ch. LEXIS 158 (Del. Ch. Aug. 18, 2006). ........ 18

*Paramount Commc'n Inc. v. QVC Network, Inc.,*
    637 A.2d 34 (Del. 1994). ..................................................................... 15

*In re Pure Res., Inc. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)........................................................................ 12, 19

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
    506 A.2d 173 (Del. 1986). .................................................................. 15, 16

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985). ................................................................... 16

*Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*,
    532 A.2d 1324 (Del. Ch. 1987)............................................................ 21

*Shell Petroleum, Inc. v. Smith*,
    606 A.2d 112 (Del. 1992). ................................................................... 16

*In re Staples, Inc. S'holders Litig.*,
    792 A.2d 934 (Del. Ch. 2001).................................................... 13, 19, 21

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992). ..................................................................... 16

*In re Topps Co. S'holders Litig.*,
    926 A.2d 58 (Del. Ch. 2007)................................................................ 16

## UNREPORTED CASES

*David P. Simonetti Rollover IRA v. Margolis*,
    2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008). .................................. 20

*Gilmartin v. Adobe Resources Crop.*,
    No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. Apr. 6, 1992)....................................13

*La. Mun. Police Emps. Ret. Sys. v. Crawford*,
    No. 2635-N, 2007 Del. Ch. LEXIS 28 (Del. Ch. Feb. 13, 2007)............................. 22

*Mich. Citizens for an Independent Press v. Thornburgh*,
    No. 88-2322, 1988 U.S. Dist. LEXIS 16576 (D.D.C. Aug. 17, 1988)..................... 12

*State of Wis. Inv. Bd. v. Bartlett*,
    No. 17727, 2000 Del. Ch. LEXIS 22 (Del. Ch. Feb. 9, 2000). ............................... 14

Plaintiff, Joan Litwin ("Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated, respectfully submits this Memorandum of Law in Support of an Order to Show Cause Why a Temporary Restraining Order Should Not Be Entered Enjoining the Special Shareholder Meeting Currently Scheduled for November 3, 2011, Granting Expedited Discovery and Setting a Hearing on Plaintiff's Application for a Preliminary Injunction.

## I.    SUMMARY OF THE ACTION

This is a direct stockholder class action brought by Plaintiff on behalf of the holders of OceanFreight, Inc. ("OCNF") common stock against OCNF, its Board of Directors (the "Board"), DryShips, Inc. ("DryShips" or "Parent"), Ocean Rig UDW, Inc. ("Ocean Rig"), and Pelican Stockholdings, Inc. ("Pelican" or "Merger Sub") (collectively the "Defendants"), arising out of their efforts to solicit OCNF shareholders' votes with less than the 20 business days' notice expressly required under relevant SEC rules, sell the Company to Parent *via* an unfair process that yielded an unfair price (the "Proposed Transaction"), and without disclosing all material information to shareholders concerning the Proposed Transaction.  *See* Ex. E to the accompanying Declaration of Mark D. Smilow ("Smilow Decl.").

On July 26, 2011, the Board entered into a definitive agreement (the "Merger Agreement") with Parent, a Republic of the Marshall Islands company, under which Pelican will merge with and into OCNF, with OCNF continuing its corporate existence as the surviving corporation in the merger and becoming a wholly-owned subsidiary of Parent (the "Merger").   At the effective time of the Merger, each share of OCNF common stock outstanding (other than shares of OCNF common stock held by Parent or OCNF or any of

their respective direct or indirect subsidiaries) will be converted into the right to receive: $11.25 in cash and 0.52326 shares of Ocean Rig common stock (the "Merger Consideration").

Entry of an order temporarily restraining Defendants and enjoining them from commencing or conducting the currently scheduled special shareholder vote is necessary because the mere 17 calendar days of notice provided to OCNF shareholders from the time of the October 17, 2011 dissemination by mail of the Proxy until the November 3, 2011 date of the vote violates Instruction A.2 to Form F-4 (the form under which the Proxy was filed). That rule expressly requires that the issuer "must" send the proxy/prospectus to investors at least 20 business days before the shareholder meeting when the documents incorporate information by reference as to the registrant or the company being acquired (Ocean Rig and OCNF), which is the case here, as evidenced in the October 27, 2011 letter by Mark D. Smilow appended as Ex. J to the Smilow Decl. and Ex. H thereto.

Furthermore, expedited discovery is sought in connection with Plaintiff's claim that Defendants have failed to provide OCNF's shareholders with sufficient material information about the process by which the Board entered into the Proposed Transaction, including the financial metrics underlying the purported financial "fairness" of the transaction. Without this essential information, OCNF's shareholders will not have the full and fair disclosure of the nature and effect of the transactions contemplated by the Proposed Transaction and will be irreparably injured by being deprived of the ability to cast their vote for or against the Proposed Transaction after being fully informed of the nature of the issues they are being asked to vote on in an intelligent manner.

Controlling case law dictates that the only real remedy for the irreparable harm faced by OCNF shareholders is for this Court to temporarily restrain and enjoin the shareholder vote unless and until disclosures of the omitted material information are provided to the OCNF shareholders and the proper amount of time from the time of the dissemination thereof until the date of the vote is provided to shareholders.  As set forth more fully herein, Plaintiff is likely to succeed on the merits of its claims and has no adequate remedy at law.  Therefore, Plaintiff respectfully asks this Court to temporarily restrain and enjoin Defendants from commencing or conducting the November 3, 2011 special shareholder vote of OCNF shareholders, or in the alternative enjoining consummation of the Proposed Transaction unless and until Defendants provide the material information that has been withheld from OCNF's shareholders.

## II.    FACTUAL BACKGROUND[1]

OCNF primarily operates and generates revenue through its ownership of drybulk carriers and tankers that operate worldwide.  OCNF owns a fleet of 6 vessels, comprised of 6 drybulk vessels (4 Capesize and 2 Panamaxes) and has contracted to purchase 5 newbuilding Very Large Ore Carriers ("VLOC") with a combined deadweight tonnage of about 1.9 million tons.  The Company's common stock trades under the ticker symbol "OCNF" on the NASDAQ Global Market.  [Dkt. No. 3, ¶¶13, 27].

### A.    Defendants Failed to Comply With the SEC's Rules Concerning the Minimum Time Period Required to Send the Proxy to Shareholders Prior to the Shareholder Meeting

The Form F-4 filed in connection with the solicitation of OCNF's shareholders' vote concerning the Proposed Transaction was filed with the SEC on October 11, 2011.  Ex. B to the

---

[1]    The factual citations are made to the Amended Complaint which has been filed with the Court, and is included as Ex. A to the Smilow Decl.

Smilow Decl. It  incorporates a myriad of information by reference pertaining to both the registrant, Ocean Rig, and the company being acquired, OCNF.  It was disseminated to OCNF shareholders by mail on October 17, and established November 3, 2011 as the date for the shareholder vote on the Proposed Transaction. The OCNF shareholders received only 17 calendar days of notice from the time of the October 17, 2011 dissemination by mail of the proxy/prospectus to the currently scheduled special shareholder meeting on November 3, 2011, in contravention of SEC Rules as more fully set forth below.

**B.      The Proposed Merger Substantially Undervalues OCNF Through an Unfair and Inadequate Process**

The process leading up to the Proposed Transaction began on May 23, 2011 when Pankaj Khanna ("Khanna"), the Chief Operating Officer of Parent, informed Anthony Kandylidis ("Kandylidis"), that Parent was interested in investigating possible strategic transactions between Parent and OCNF.  [Dkt. No. 3, ¶30].

Later that week, on May 27, 2011, OCNF held a board meeting during which Kandylidis informed the Board that he received an expression of interest from Parent and the Board constituted a special committee comprised of Defendants John Liveris ("Liveris"), George Biniaris ("Biniaris") and Panagiotis A. Korakas ("Korakas") (the "Special Committee") to evaluate, discuss and negotiate any proposal by Parent for a strategic transaction and to make a recommendation to the Board at the appropriate time.  [Dkt. No. 3, ¶31].

On June 8, 2011, Khanna sent a letter to the Special Committee outlining a proposed transaction, whereby, Parent would acquire a majority interest in OCNF held directly or indirectly by Kandylidis.  [Dkt. No. 3, ¶32].

4

On June 15, 2011, the Special Committee responded to Khanna's letter acknowledging the benefits of a potential transaction with Parent but stating its strong preference that all shareholders of OCNF participate in the transaction and receive the same consideration.  The Special Committee requested that Parent consider acquiring all the shares of OCNF thereby potentially gaining full ownership of OCNF.  [Dkt. No. 3, ¶33].

On June 17, 2011, Khanna sent a response to the Special Committee reiterating the rationale and benefits of the proposed transaction and, in addition, offering for Parent to acquire, at a mutually acceptable price, OCNF's newbuild contracts for its five VLOCs, of which two are unfinanced.  [Dkt. No. 3, ¶34].

On June 21, 2011, the Special Committee responded to Khanna reiterating its preference for a transaction on equal terms for all OCNF shareholders either in the form of an offer being made for all shares on equal terms or in the form of an undertaking by Kandylidis whereby he would commit to extend Parent's offer for the shares held directly or indirectly by Kandylidis on a pro-rata basis to the remaining shareholders.  The Special Committee informed Khanna that it may consider other alternatives to realize the value of OCNF's stock for all shareholders.  The Special Committee, however, indicated its willingness to sign a non-disclosure agreement and exchange due diligence material with Parent.  [Dkt. No. 3, ¶35].

On June 28, 2011, Khanna informed the Special Committee that Parent was willing to proceed with a transaction which would involve an acquisition of all of the outstanding shares of OCNF common stock in which all shareholders would receive the same consideration per share, and that Parent was willing to acquire all of the outstanding common stock of OCNF for $0.60 per share (or $12 per share on a 1-for-20 reverse stock split adjustment) in an all cash transaction, subject to satisfactory due diligence.  A non-disclosure agreement was executed on

the same day and on June 29, 2011, a full due diligence request list was provided to the Special Committee by Parent.  [Dkt. No. 3, ¶36].

On July 1, 2011, the Special Committee held a meeting by telephone, attended by its financial advisor Fearnley Fonds ASA ("Fearnley"), and its legal advisor, Seward & Kissel LLP ("Seward"), to discuss various matters, including (i) informal discussions between Liveris and Khanna concerning the terms of the indicative expression of interest contained in Parent' June 28, 2011 letter to the Special Committee, and (ii) the general process, securities law and other considerations to be taken into account in connection with the proposed transaction, including Fearnley's views on possible alternatives to the proposed transaction.  [Dkt. No. 3, ¶37].

On July 11, 2011, Khanna informed the Special Committee that Parent had reviewed the diligence materials that had been made available to it and had revised its proposal to acquire all of the outstanding shares of OCNF.   Khanna noted that Parent proposed to acquire (i) the approximately 50.5% ownership interest in OCNF held directly or indirectly by Kandylidis for $14 per share in cash and (ii) the remaining OCNF shares for shares of Ocean Rig presently owned by Parent with an implied value of $16 per OCNF share.  [Dkt. No. 3, ¶38].

On July 12, 2011, Special Committee informed Parent that it could not recommend Parent's offer and that, in light of the underlying values of OCNF, the Special Committee deemed the offer price as insufficient.  **The Special Committee indicated that it believed an offer of at least $22.50 per share was warranted**.  [Dkt. No. 3, ¶39].

On July 14, 2011, Khanna informed the Special Committee that Parent had further revised its proposal and was willing to proceed with a transaction in which Parent would acquire the shares held directly or indirectly by Kandylidis for $16 per share in cash and all other OCNF

shares for shares of Ocean Rig in an offer which Parent believed reflected an implied value of $18 per OCNF share.  [Dkt. No. 3, ¶40].

On July 14, 2011, the Special Committee reiterated the position set out in its July 12th correspondence that the proposed offer did not reflect the underlying value of OCNF and that the offer did not address the Special Committee's desire for equal treatment of all of OCNF's shareholders.  The Special Committee proposed that 50% of the consideration to all shareholders be paid in cash and the remaining 50% in the form of Ocean Rig shares valued at $17.50 per Ocean Rig share (the then trading level).  **The Special Committee communicated its view that an offer on this basis should be priced at $26 per OCNF share** and all shareholders should be paid at the same time.  [Dkt. No. 3, ¶41].

On July 15, 2011, Khanna informed the Special Committee that Parent was willing to modify the proposed terms of the acquisition so that all shareholders of OCNF would receive the same cash and stock consideration.  [Dkt. No. 3, ¶42].

On July 15, 2011, the Special Committee agreed, in light of the revised proposal from Parent, to meet in person with Parent and its advisors in Athens the following week to further discuss the transaction.  [Dkt. No. 3, ¶43].

On July 19, 2011, the Audit Committee chairman of Parent, Harry Kerames ("Kerames"), along with Khanna and the Parent's advisors, met with members of the Special Committee and its advisors to discuss the potential transaction.  At the conclusion of the negotiations, the parties agreed in principle, subject to negotiation of definitive agreements reflecting other terms of the proposed transaction, Parent's completion of its due diligence review and board approval, on a transaction that would occur in two stages: (i) no less than four weeks after signing, Parent would acquire the approximately 50.5% equity interest in OCNF held directly or indirectly by

Kandylidis at a price per OCNF share equal to $11.25 in cash and 0.52326 shares of Ocean Rig,

$16.44 based on the July 25, 2011 closing price of 89.00 NOK for the shares of Ocean Rig on the

Norwegian OTC, and (ii) Parent would acquire all other shares of OCNF for the same

consideration by means of a one-step merger of a newly-formed subsidiary of Parent with

OCNF.   [Dkt. No. 3 ¶44].

On July 25, 2011, the Special Committee met to approve the transaction.  Fearnley,

which acted as the financial advisor to the Special Committee, delivered its oral fairness opinion

at the meeting by presenting its conclusion that the merger consideration to be received by the

holders of OCNF common stock was fair from a financial point of view to such holders.

Fearnley also delivered its written fairness opinion to the Special Committee on the same date.

Subsequently, Seward presented the structure of the transaction and discussed the duties and

obligations applicable to the Special Committee.  After the presentations, the Special Committee,

among other things, unanimously approved and recommended the transaction to the Board and

unanimously approved and recommended that the Merger Agreement be submitted to the OCNF

shareholders for their approval.  After reviewing the Special Committee's recommendations, the

Board, among other things, unanimously approved the transaction, unanimously directed that the

Merger Agreement be submitted to the OCNF shareholders for their approval.  [Dkt. No. 3,

¶45].

Despite the infirmities in the process, on July 26, 2011, the parties signed the Merger

Agreement and the Purchase Agreement and announced the transaction.  [Dkt. No. 3, ¶ 46].

The Proposed Merger is the product of a fundamentally flawed process, undertaken in

breach of the Board's fiduciary duties, and designed to ensure the sale of OCNF to Parent on

terms preferential to Parent and provide for material benefits for the Company's insiders.  [Dkt.

No. 3, ¶¶54, 55, 56, 58, 59, 60].

Specifically, the Board utterly failed to describe the sales process leading up to the Proposed Transaction, including the analysis performed by the Special Committee in determining on July 12, 2011 that an offer of at least $22.50 per OCNF share was warranted and its view on July 14, 2011 that an offer, on the basis of 50% of the consideration to all shareholders be paid in cash and 50% in the form of Ocean Rig shares, be valued at $26.00 per OCNF share; the Special Committee's consideration of value maximizing alternatives to the Proposed Transaction and details, if any, as to leveraging tactics used by the Special Committee in its negotiations with Parent prior to OCNF's entry into the Proposed Transaction; and displayed a lack of concerted effort to induce a higher offer from Parent and ignored the possibility of maintaining the Company as a stand-alone entity.  Such conduct flies in the face of the Board's duty to maximize shareholder value where, as here, the Company was for sale and the Board had a duty to secure the best price possible.  [Dkt. No. 3, ¶¶49, 59].

Moreover, Defendants took pains to structure the Proposed Transaction so that it preserves a role for management going forward in the combined company, and enables certain entities controlled by Company insiders to secure other material benefits, including lucrative consultancy fees and change-in-control payments, or "golden parachutes."  [Dkt. No. 3, ¶54, 55].

To make matters worse, the Board agreed to preclusive deal protection devices that make it nearly impossible for competing buyers to make a successful competing bid for the Company.  These provisions, which undermine shareholder value, include: (i) a "No-Solicitation" provision that prohibits the Company from soliciting other offers, (ii) a $4.5

9

million "Termination Fee" on OCNF shareholders making any competing transaction that much more expensive to any potential acquirer, and (iii) Parent's agreement to vote the 50.5% of OCNF shares, which were held by entities controlled by Defendant Kandylidis, in favor of the approval of the Proposed Transaction.  The collective effect of these provisions chills any possibility of a post-signing market check.  [Dkt. No. 3, ¶¶61, 62, 63].

OCNF shareholders are further harmed in that they have no recourse to seek appraisal rights for the fair value of their OCNF shares, even though they are effectively being foreclosed from exercising a meaningful vote on the Proposed Transaction containing inadequate merger consideration.  [Dkt. No. 3, ¶64].

### C. Defendants Filed a Materially Misleading Proxy That Omits Information Necessary to Enable Shareholders to Cast Informed and Intelligent Votes on Whether to Approve or Reject the Proposed Merger

In order to secure shareholder approval of this unfair deal, Defendants filed a materially misleading Proxy with the SEC on October 13, 2011[2].  The Proxy, which recommends that OCNF shareholders vote in favor of the Proposed Transaction at the special meeting of OCNF shareholders on November 3, 2011, omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Company.  As further detailed herein, the Proxy omits/or misrepresents the material information detailed below in contravention of §§14(a) and 20(a) of the 1934 Act and/or Defendants' duty of candor and full disclosure under state law, [Dkt. No. 3, ¶¶48-53].

---

[2]   Attached as Exh. B to the Smilow Decl.

III.    **ARGUMENT**

   A.    **The Standard For a Preliminary Injunction**

Pursuant to Federal Rule of Civil Procedure 65, this Court may issue a preliminary injunction to enjoin the Proposed Transaction.  A party seeking a preliminary injunction must generally demonstrate that it will suffer irreparable harm absent injunction relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party.  *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010).

As discussed herein, Plaintiff satisfies each of the above elements and demonstrates why this Court should enter an order enjoining the November 3, 2011 shareholder vote and further enjoin any shareholder vote unless and until the Defendants provide OCNF shareholders with the material disclosures that were omitted from the Proxy.[3]

   B.    **Shareholders Will Suffer Significant Irreparable Injury
          and Imminent Harm Absent the Court's Intervention.**

Instruction A.2 to Form F-4 (the form under which the Proxy was filed) requires that the issuer must  send the proxy/prospectus to investors at least 20 business days before the shareholder meeting when the F-4 document incorporates information by reference as to the registrant or the company being acquired (Ocean Rig and OCNF respectively).  As evidenced by Exhibit E to the Smilow Decl. attached hereto, a myriad of information was incorporated by reference to the Form F-4 filed with the SEC on October 11, 2011, pertaining to both Ocean Rig

---

[3]    The Proxy states that the Marshall Islands' Business Corporations Act specifically incorporates the non-statutory law or judicial case law, of the State of Delaware and other states with substantially similar legislative provisions.  Accordingly, Delaware law apparently applies to this case.

and OCNF.  Defendants failed to comply with the SEC's requirement, having disseminated the Proxy to OCNF shareholders by mail on October 17, 2011, a mere 17 calendar days before the special shareholder vote on November, 3, 2011 and less than the 20 business day requirement.

Further, it is well settled that irreparable harm is established as a result of dissemination of a proxy solicitation that contains material misrepresentations and/or omissions, and when such proxy solicitation seeks shareholder support of a fundamental business transaction such as a merger.  *See, e.g., Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970); *MONY Group, Inc. v. Highfields Cap.Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004); *ICN Pharms., Inc. v. Khan*, 2 F.3d 484, 489 (2d Cir. 1993); *Mai Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212, 218 (1st Cir. 1989); *Polaroid Corp. v. Disney*, 862 F.2d 987, 1006 (3d Cir. 1988); *Marshall Field & Co. v. Icahn*, 537 F. Supp. 413, 416 (S.D.N.Y. 1982); *accord ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003); *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 452-53 (Del. Ch. 2002).

In such circumstances, it is appropriate for a court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected to avoid having to "unscramble the eggs" following the completion of an infirm shareholder vote.  *See Mich. Citizens for an Indep. Press v. Thornburgh*, No. 88-2322, 1988 U.S. Dist. LEXIS 16576, at *18 (D.D.C. Aug. 17, 1988) (finding irreparable injury from merger because consolidation would make it "very difficult to reassemble this egg once it has been scrambled"); *Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*, 636 F. Supp. 1513, 1517 (S.D. Ind. 1986) ("The virtual impossibility of 'unscrambling the scrambled egg,' once these parties are joined in corporate (shotgun) matrimony . . . constitutes . . . irreparable harm . . . ."); *accord ODS Techs., L.P. v. Marshall,* 832 A.2d 1254, 1263 (Del. Ch. 2003).  A denial of

Plaintiff's motion will forever foreclose shareholders' ability to make an informed decision on this fundamental question concerning the very corporate existence of OCNF.  *See Marshall Field*, 537 F. Supp. at 416 (concluding that irreparable harm exists in a change of control transaction where shareholders are denied "important and legally required information . . . which may affect their judgment as to whether their stock should be sold . . . or held").

Vindication of the recognized right to cast an informed decision "requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages."  *Gilmartin v. Adobe Resources Crop.*, No. 12467, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. Apr. 6, 1992); *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051 (Del. Ch. 1987); *Joseph v. Shell Oil Co.*, 482 A.2d 335, 344 (Del. Ch. 1984).  Indeed, as was stated in *Polaroid Corp. v. Disney*:

> Irreparable harm arises because of the difficulty of proving money damages in a suit based on material misrepresentations . . . .  While Congress has determined that accurate disclosure is important to shareholders, it would often be impossible for shareholders to prove that . . . accurate disclosure would have affected their decision making in a particular way with concomitant quantifiable monetary loss. The inadequacy of a remedy at law and the importance that Congress has attached to accurate disclosure of material information establishes irreparable harm.

*Polaroid*, 862 F.2d at 1006.

In this case, Defendants' failure to disclose the material information discussed below warrants the issuance of a preliminary injunction to postpone consummation of the Proposed Merger until defendants comply with their obligations under §§ 14(a) and 20(a).

**C.    The Harm to Plaintiff and Other OCNF Shareholders
Outweighs Any Hypothetical Harm to Defendants.**

Here, no hardship to the defendants will occur as a result of the sought-after injunctive relief.  *See In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("[O]ur cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.  An injunctive

remedy of that nature specifically vindicates the stockholder right at issue – the right to receive fair disclosure of the material facts necessary to cast a fully informed vote – in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable."); *see also State of Wis. Inv. Bd. V. Bartlett*, No. 17727, 2000 Del. Ch. LEXIS 22 (Del. Ch. Feb. 9, 2000) (noting that hardships suffered by defendant by delay of vote were *de minimis* when compared to the possibility that the shareholders voted on the extinction of their corporation with less than all the material reasonably available to them).

Indeed, postponement of the Proposed Merger is beneficial to Defendants, as it gives them time to correct their material disclosure violations and avoid the years of litigation that would likely arise if Defendants were to obtain shareholder approval for an inferior deal without providing shareholders all material information necessary to decide whether to vote in favor of the Proposed Transaction despite its inadequacies.  *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 207-08 (Del. Ch. 2007) ("By this approach, the court also ensures that greater effect can be given to the resulting vote down the line, reducing future litigation costs and transactional and liability uncertainty.").  As the court in *Gilmartin* noted:

> To allow the merger to go forward would deprive the . . . [s]tockholders of [the right to full disclosure], whereas a preliminary injunction for a brief period to enable the defendants to make corrective disclosure is the remedy most likely to vindicate that right.

1992 Del. Ch. LEXIS 80, at *43.

Defendants themselves cannot claim that they will be harmed by a short delay.  A short delay, caused by Defendants' own failure to disclose material information, to enable Plaintiff and the rest of OCNF's shareholders to make an informed decision can hardly be construed to cause defendants harm.

**D.   Plaintiff Has Demonstrated More Than a Strong Probability of Success on the Merits of its Claims.**

**1.   Delaware Common Law.**

It is clear that "[t]he applicable standard on a motion for preliminary injunction falls well short of that which would be required to secure final relief following trial, since it explicitly requires only that the record establish a reasonable probability that this greater showing will ultimately be made." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998). In this case, the material Proxy omissions alone establish more than a reasonable probability that the Board breached its fiduciary duties by failing to disclose material information to OCNF's shareholders in connection with the Proposed Merger.

Under Delaware law, a company's Board owes the company's stockholders a duty of due care, good faith and loyalty. *McMullin v. Beran*, 765 A.2d 910, 924 (Del. 2000). The Board's fiduciary obligations require directors to:

> [E]xercise due care, good faith and loyalty whenever they communicate with shareholders about the corporation's affairs. When shareholder action is requested, directors are required to provide shareholders with all information that is material to the action being requested and "to provide a balanced, truthful account of all matters disclosed in the communication with shareholders."

*Id.* at 925.

Where the Board's action will result in a change of control, such as the Proposed Merger at issue here, the Board's fiduciary duties usually "demand[] a canvas of the market to determine if higher bids may be elicited." *Barkan v. Amsted Indus.*, 567 A.2d 1279, 1287 (Del. 1989); *see also Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986). To be sure, in such a sale of control context, the Board is duty bound to "focus on one primary objective – to secure the transaction offering the best value reasonably available for the stockholders – and they must exercise their fiduciary duties to further that end." *Paramount*

*Commc'n Inc. v. QVC Network, Inc.*, 637 A.2d 34, 44 (Del. 1994); *see also Revlon*, 506 A.2d at 182 ("The duty of the board . . . [is] the maximization of the company's value at a sale for the stockholders' benefit."). "[L]ack of an active sales effort" constitutes strong evidence that a company's board breached its fiduciary duties. *In re Netsmart,* 924 A.2d at 195 n.76.

In connection with the Board's fiduciary duties, company directors owe shareholders a fiduciary duty of candor, which the Delaware Supreme Court has repeatedly articulated. *See, e.g., Shell Petroleum, Inc. v. Smith*, 606 A.2d 112, 114 (Del. 1992); *Stroud v. Grace*, 606 A.2d 75, 84-85 (Del. 1992); *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985). In *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A2d 1270 (Del. 1994), the Delaware Supreme Court held that, "directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Arnold*, 650 A.2d at 1277; *see also In re Topps Co. S'holders Litig.*, 926 A.2d 58, 64 (Del. Ch. 2007) ("[Directors] have a duty to provide the stockholders with the material facts relevant to making an informed decision [and] . . . must also avoid making materially misleading disclosures, which tell a distorted rendition of events or obscure material facts.").

Moreover, "Delaware disclosure law also proscribes misleading partial disclosures. When fiduciaries undertake to describe events, they must do so in a balanced and accurate fashion, which does not create a materially misleading impression." *Clements v. Rogers*, 790 A.2d 1222, 1240 (Del. Ch. 2001).

The test for whether a fact is material is well-settled:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . . [This standard] does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in

> the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*In re MONY Group, Inc. S'holder Litig.*, 852 A.2d 9, 24 (Del. Ch. 2004). This test for materially represents an objective standard measured from the viewpoint of the reasonable investor, and does not require that the information be of such import that its revelation would cause an investor to change his vote.  *Id.*

### 2.      **Federal Law.**

A Claim under section 14(a) requires proof of three elements:  "(1) defendants misrepresented or omitted a material fact in a proxy statement, (2) defendants acted at least negligently in distributing the proxy statement, and (3) the false or misleading proxy statement was an essential link in causing the corporate actions."  *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd*, 20 F.3d 465 (5th Cir. 1994).

"The touchstone of a § 14(a) violation is a material misstatement – something 'that a reasonable shareholder would consider . . . important in deciding how to vote.'"  *Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  As set forth by the Supreme Court in *TSC*:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote.  What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC*, 426 U.S. at 449.  Here, defendants have failed to disclose all material information that OCNF's shareholders would view as important to know before voting their shares, *id*., as set forth above and discussed below.

> **3.      The Material Omissions Justifying a Preliminary Injunction**

As Plaintiff set forth in her Amended Complaint, Defendants have neglected to provide the following material information to OCNF's shareholders in contravention of federal and common law.  These material omissions deprive Company shareholders from casting informed, intelligent and rational votes on whether to vote in favor or against the Proposed Transaction. Plaintiff details these material omissions as follows:

> **a.      The Proxy Fails to Disclose Material Financial Information**
> **Financial Projections**

Financial projections are routinely included in disclosure materials.  For example, in *Netsmart*, the court held that the disclosures were materially incomplete where they failed to disclose the projections used to perform the discounted cash flow analysis.  *In re Netsmart*, 924 A.2d at 200-203.  The court stated:

> Once a board broaches a topic in its disclosures, a duty attaches to provide information that is "materially complete and unbiased by the omission of material facts."   For this reason, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion **as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.**  Only providing some of that information is insufficient to fulfill the duty of providing a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote . . . rely."

*Id*. at 203-204 (emphasis added).

Courts have repeatedly emphasized the important role that financial projections prepared by management play in a shareholder's decision regarding a proposed transaction.  *See, e.g., In re PNB Holding Co. S'holders Litig.*, Consol. C.A. No. 28-N, 2006 Del. Ch. LEXIS 158, at *58

(Del. Ch. Aug. 18, 2006) ("[R]eliable management projections of the company's future prospects are of obvious materiality to the electorate.  After all, the key issue for the stockholders is whether accepting the [Proposed Transaction] price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company.");  *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("the projections are the information that most stockholders would find the most useful to them.").  The Proxy has failed to disclose the projections for OCNF as required by law.

    **b.    The Proxy Fails to Disclose Key
            Inputs for Fearnley Financial Analysis**

As stated above, a fair summary of a financial advisor's analyses needs to be disclosed to shareholders.  *Pure Resources*, 808 A.2d at 449.  In several instances, the Proxy fails to disclose key inputs and assumptions underlying the analyses performed by Fearnley in connection with its fairness opinions, making it impossible for shareholders to draw any conclusions as to the reliability of Fearnley's analyses.  In particular, the Proxy is deficient and should provide, *inter alia*, the following regarding Fearnley's fairness opinion:

  i.    Details regarding OCNF's assumptions in its various financial forecasts and analyses, relating to the business, operations and prospects of OCNF, provided to Fearnley for its Fairness Opinion and critical to OCNF's shareholders in making an informed decision on whether to vote for approval of the Proposed Transaction;

  ii.   Details regarding the share trading price history and valuation multiples for OCNF common stock and Ocean Rig common stock and the comparison of these with those of certain publicly traded companies Fearnley relied upon in providing its Fairness Opinion; and

  iii.  Details of the proposed financial terms of the Merger with the financial terms of certain other transactions Fearnley relied upon in providing its Fairness Opinion.

19

The information above is necessary for OCNF shareholders to be able to evaluate and understand the sales process and analyses rendered in connection with the Proposed Transaction. Therefore, the aforementioned omitted information is highly relevant and material to OCNF shareholders.

### E.    Shareholders Will Suffer Irreparable Harm Without An Injunction

In the context of inadequate disclosure and a flawed process, "money damages after-the-fact constitute, at best, an inadequate consolation prize" for shareholders.  *David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78, at *44 (Del. Ch. June 27, 2008).  "In light of this reality, this Court's stated preference is to avoid the damages issue altogether through an injunctive remedy requiring additional disclosures in advance of the stockholder vote whenever possible."  *Id.*

Here, in the absence of all material information, OCNF shareholders will suffer irreparable harm because they will be forced to make an uninformed decision about whether to vote in favor of the Proposed Transaction.  *See, e.g., ODS Techs.,* 832 A.2d at 1262  ("The threat of an uninformed stockholder vote constitutes irreparable harm.");  *Pure*, 808 A.2d at 452 (holding that "irreparable injury is threatened when a stockholder might make a tender voting decision on the basis of materially misleading or inadequate information.").

By the same token, because the Board has failed to engage in a reasonable active bidding process, a pre-or-post signing market check, or other efforts that are reasonably calculated to determine the true value of the Company, OCNF shareholders may be forced to consider a price that has no rational basis in fact. Accordingly, the only way to reliably determine price under these circumstances is to force the Company to employ a competitive bidding process or post-market check to determine whether any alternative acquirers would submit a superior proposal.

*See In re Staples*, 792 A.2d at 960 ("[O]ur cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.").   In this regard, the damages resulting from the Board's breaches of fiduciary duty are exceedingly difficult to quantify.   *See, e.g., Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1341 (Del. Ch. 1987) ("irreparable harm warranting injunctive relief is appropriate in cases where damages would be difficult to assess"); *In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669, 676 (Del. Ch. 1986) (irreparable harm found where damages difficult to determine.)

  **F. The Balance Of The Equities Strongly<br>   Favors Issuing An Injunction**

   The decision to grant or deny a preliminary injunction rests in the sound discretion of the trial court.   *IT Corp. v. County of Imperial*, 35 Cal. 3d 63, 69 (1983).   There is no question that the equities favor the entry of injunctive relief here.   Without full and adequate disclosure, Plaintiff and the other investors must make a grossly uninformed decision about how to vote their shares.

   In contrast, any required postponement of the November 3, 2011 shareholder vote to require additional disclosure would minimally delay the transaction – if at all – for only so long as would be necessary for the shareholders to digest the newly disclosed information and the Board to pursue a value-maximizing process.   The injunction would not be indefinite, and the Proposed Transaction could still take place, provided, of course, that it offers shareholders the highest price realistically achievable under the circumstances.

   In any event, any delay attendant with an injunction is a consequence of defendants' own failure to make sufficient disclosure in the first place, because the information that plaintiff seeks was within their possession when they issued the Proxy.   *See La. Mun. Police Emps. Ret. Sys. v.*

*Crawford*, No. 2635-N, 2007 Del. Ch. LEXIS 28, at *5 (Del. Ch. Feb. 13, 2007) ("[I]n considering the balance of equities between plaintiffs and defendants, it is relevant to note that any wounds to defendants are entirely self-inflicted.").

## G.    The Injunction Will Serve the Public Interest

The provisions of the 1934 Act serve vital public interests, not just private ones.  By providing an adequate remedy for defrauded investors and deterring violations, vigilant enforcement of the 1934 Act guards the greater economic health of the nation by ensuring the stability of capital markets.  *See, e.g., Krull v. SEC*, 248 F.3d 907, 915 (9th Cir. 2001).  Thus, full disclosure of all material information is critical to the ability of potentially thousands of OCNF public shareholders to determine fair value for their equity interests.  Accordingly, considerations of public policy also weigh in favor of granting Plaintiff's requested preliminary injunction

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for a temporary restraining order and  to preliminarily enjoin the November 3, 2011 shareholder vote until OCNF shareholders are furnished with a new proxy/prospectus in compliance with SEC rules and disclosure requirements, and until the Board properly shops the Company and provides adequate disclosures to shareholders, and ensures that a fully-informed shareholder vote will take place with respect to any value-maximizing transaction.  In connection

with the foregoing, Plaintiff further requests that her application for expedited discovery be granted.

Dated:  October 27, 2011                                      **WEISS & LURIE**


        s/*Mark D. Smilow*_____
Joseph H. Weiss
Mark D. Smilow
Michael A. Rogovin
1500 Broadway, 16th Fl.
New York, NY  10036
(212) 682-3025
(212) 682-3010 Fax

*Attorneys for Plaintiff Joan Litwin*